(No. 23411.—

ELIJAH F. HAYS *et al.* Appellees, *vs.* THE ILLINOIS TERMINAL TRANSPORTATION COMPANY. — (THE PEOPLE *ex rel.* Edward J. Barrett, Auditor of Public Accounts, Appellant.)

*Opinion filed April 24, 1936—Rehearing denied June 3, 1936.*

OTTO KERNER, Attorney General, (W. F. GRAY, of counsel,) for appellant.

R. E. SMITH, for appellees.

HUGH J. GRAHAM, for the Illinois Terminal Transportation Company.

Mr. JUSTICE JONES delivered the opinion of the court:

The issue in this case is whether an enlisted man in the Illinois National Guard who is injured while in active service is entitled to an award under the Workmen's Compensation act. The question is presented to this court by an appeal from the circuit court of Piatt county, which denied leave to the State of Illinois to intervene in a personal injury suit brought by plaintiffs against the Illinois Terminal Transportation Company. The circuit court held that the guardsmen are not entitled to the benefits of the Compensation act. The People have appealed.

Plaintiffs were members of the National Guard and had been assigned to active duty in Christian county to suppress

riots. In returning to their homes in Jefferson county they traveled by motor bus. An explosion and fire occurred in the bus and several guardsmen were injured. Two of them died as a result. The State paid $32,183.85 for nurse hire, doctor bills, hospital expenses and awards made by the court of claims on account of such injuries. It filed a suit in the circuit court of Sangamon county against the transportation company, claiming a right to subrogation under section 29 of the Workmen's Compensation act. Plaintiffs filed the instant common law action in the circuit court of Piatt county against the transportation company to recover damages for their injuries. The State's petition to intervene prays that this suit be dismissed, or, in the alternative, that the intervenor be substituted as plaintiff, and that the cause be transferred to Sangamon county, to be consolidated with the suit pending there. A motion by defendant to dismiss this suit was also denied.

The State and the transportation company take the position that an enlistment is a voluntary contract of hire, and that members of the National Guard, when in active service, are under the Workmen's Compensation act. Plaintiffs contend they are not under the act and that the award made to them was by virtue of the State Military Code. (Ill. State Bar Stat. 1935, chap. 129.) They therefore claim the State is not entitled to subrogation and that they have a right to maintain their suit against defendant for damages.

It is conceded by all parties that the State, and each municipal corporation therein, are included within the term "employer" whenever the nature of the employment is sufficient to bring it within the act. An "employee" includes every person (with a few specified exceptions) who is under appointment or contract of hire by the State in such an employment. It is claimed by the State and by the transportation company that because the Military Code provides pay on a per diem basis for active service of guards-

men they are under a contract of hire and hence within the provisions of the Workmen's Compensation act. In support of this contention reliance is placed upon *State* v. *Long*, 136 La. 1; *Ex parte Blackington*, 245 Fed. 803; *Nebraska National Guard* v. *Morgan*, 112 Neb. 432; *Baker* v. *State*, 200 N. C. 232. The *Long case* and the *Blackington case* did not involve claims under compensation acts. In the *Long case* an enlisted man was convicted in a court martial proceeding for the violation of a regulation which became effective after his enlistment. It was held that his enlistment constituted a voluntary contract, and that the State had no power to impose upon him additional conditions and obligations to which he had not given his assent. In the *Blackington case* an enlisted man in the United States army endeavored by *habeas corpus* proceedings to be discharged from service. The court held that his enlistment was a contract which bound him to military service for a specified length of time and that he was not entitled to discharge. Neither of these cases is persuasive in the determination of the question here involved. In the Nebraska case a carpenter by the name of Morgan was employed by the National Guard to erect sheds on an encampment field. He was not a member of the militia. He fell over an obstruction and was injured. He sought compensation. The defense was that the National Guard was not an agency of the State, but the Supreme Court of Nebraska held otherwise and compensation was awarded. It is quite obvious that the question for decision in that case is foreign to anything here involved. The North Carolina case above cited is more nearly in point. There an enlisted man was injured while cranking a tractor. The court held he was entitled to compensation because he was not included in any of the classes of persons expressly excepted from the provisions of the act. At the time the award was made to him there was no other provision of law in North Carolina entitling him to compensation for his injuries. This

fact marks an important distinction on this subject between the laws of North Carolina and Illinois.

The act relating to the militia (Ill. State Bar Stat. 1935, chap. 129,) is a complete code for the military and naval affairs of the State. Section 10 of article 16 of the code provides that any officer or enlisted man who may be wounded or disabled in any way, while on duty and lawfully performing the same, so as to prevent his working at his profession, trade or other occupation from which he gains his living, shall be entitled to be treated by an officer of the medical department detailed by the surgeon general and to draw one-half his active service pay for not to exceed thirty days of such disability, on the certificate of the attending medical officer. If still disabled at the end of thirty days he shall be entitled to draw pay at the same rate for such period as a board of three medical officers duly convened by order of the commander-in-chief may determine to be right and just, but not to exceed six months unless approved by the State court of claims. Section 11 provides that in every case where an officer or enlisted man shall be injured, wounded or killed while performing his duty in pursuance of orders from the commander-in-chief, he or his heirs or dependents shall have a claim against the State for financial help or assistance, and the State court of claims shall act on and adjust the same as the merits of each case may demand. Section 13 provides that necessary hospital charges in such cases, and for beds in open or general wards, shall be paid by the State. Section 14 provides that all payments under the above sections shall be made from the military emergency fund.

The relation between the State and those who are in voluntary military service is essentially different from the relation which obtains between master and servant. Military service is based upon the duty which every citizen owes to the sovereign and differs from ordinary employment in this: that the enlisted man cannot terminate his

service at will. (*United States* v. *Grimley,* 137 U. S. 147; *Morrissey* v. *Perry,* 137 id. 157.) By the terms of the Military Code, penalties for infraction of the regulations therein prescribed may even extend to imprisonment. It thus appears that although an enlistment is a contract, it is not the usual contract of employment contemplated by the Workmen's Compensation act.

One of the elements in determining the intent of the legislature is the history of the legislation on the subject. (*Alexander Lumber Co.* v. *Coberg,* 356 Ill. 49; *Chicago, Burlington and Quincy Railroad Co.* v. *Doyle,* 258 id. 624.) The Workmen's Compensation act was enacted in 1911. It is based upon the broad economic theory that accidental death or injury in industrial activity and production is an incident thereto and that compensation therefor is properly chargeable as a part of the cost of such activity and production. (*Faber* v. *Industrial Com.* 352 Ill. 115; *Wangler Boiler Co.* v. *Industrial Com.* 287 id. 118.) The Military Code was enacted in 1909. Since its enactment several amendments have been made to each of the acts. The Military Code was amended as late as the session of 1933. The legislature was cognizant of the provisions of that code for compensating those engaged in the military service for injuries or death occurring while in service and has manifested no intent to repeal any of those provisions, either by implication or otherwise. Throughout the history of the legislation on these two subjects no change was made in the provisions of the Military Code for such compensation. It is entirely unlikely that the legislature intended to compel the State to pay double compensation in case of injury or death—once under the Military Code and again under the Workmen's Compensation act. The latter act is not to be so construed.

The fact that section 6 of the Court of Claims act (Ill. State Bar Stat. 1935, chap. 37, par. 467,) invests it with power to hear and determine the liability of the State for

accident, injuries or death suffered by any employee of this State in the course of his employment and relieves the Industrial Commission of any duty relative thereto does not tend to show that persons engaged in the military service of the State come within the definition of "employees" in the Workmen's Compensation act. It was not the intent of the legislature to include persons in the military service within the definition of "employees" in the Workmen's Compensation act.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*