MORRIS GOLDSTEIN et al., as Administrators of the Estate of JACK GOLDSTEIN, Deceased, Respondents, *v.* STATE OF NEW YORK, Appellant. (Claim No. 24726.)

Argued September 29, 1939; reargued October 16, 1939; decided
November 21, 1939.

*John J. Bennett, Jr., Attorney-General (Henry Epstein, Joseph L. Delaney, Leon M. Layden* and *Jack Goodman* of counsel), for appellant.

*Julius Applebaum* and *Samuel S. Leibowitz* for respondents.

HUBBS, J. Claimants filed a claim against the State for damages growing out of the death of their son as the result of the negligence of a fellow private of the State militia and an officer thereof. The claim is based on section 130 of the Decedent Estate Law (Cons. Laws, ch. 13).

At the commencement of the trial on the claim before the Court of Claims the State moved to dismiss the claim on the ground that " there were only two remedies open to 'claimants and which were exclusive: (a) under the Military Law of the State; (b) under the Workmen's Compensation Law." The motion was renewed at the close of the evidence and subsequently granted. The judgment dismissing the claim was reversed by the Appellate Division, upon the law, and the claim was remitted to the Court of Claims for a new trial (256 App. Div. 141). At the new trial the record of the first trial was used and by stipulation

it is made a part of the record on appeal before this court. Following the decision of the Appellate Division the Court of Claims awarded to the claimants $15,493.50, with interest. The State appealed to the Appellate Division, which unanimously affirmed the judgment and granted permission to appeal to this court. The only points urged in this court by the State are the two grounds quoted above in the motion made by the State for a dismissal of the claim.

It is urged by the State that the deceased, a private of the State militia, who was engaged in active service at the time of the injury which caused his death, and suffered such injury as a result of the negligence of a fellow private and of a militia officer, was an employee of the State and that, therefore, the Workmen's Compensation Law (Cons. Laws, ch. 67) afforded the exclusive remedy. It is conceded that if deceased was an employee of the State covered by that law there can be no recovery in this proceeding.

Section 2 of the Workmen's Compensation Law, in part, defines an employer as follows: " 3. 'Employer,' except when otherwise expressly stated, means a person * * * employing workmen in hazardous employments including the state * * *."

An employee is defined by section 2, subdivision 4, as follows: " 4. 'Employee' means a person engaged in one of the occupations enumerated in section three or who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant * * *."

Section 2, subdivision 5, defines employment as follows: " 5. 'Employment' includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain * * *."

Section 3 reads: " 1. Hazardous employments. Compensation shall be payable for injuries or death incurred by employees in the following employments: * * *."

Then follow groups of different employees covered by the statute. Group 16 reads as follows: " Group 16. Any

employment by the state, notwithstanding the definitions of the terms ' employment,' ' employer ' or ' employee ' in subdivisions three, four and five of section two of this chapter."

It is contended that by this group the Legislature intended to bring within the provisions of the Workmen's Compensation Law certain employees of the State who might not be covered in the other groups of employees specified in section 3.

The deceased, while in active service in the militia, received $1.25 per day pay. It is, therefore, urged by the State that as he received pay from the State and was engaged in the service of the State he was an employee of the State within the meaning of group 16 of section 3 of the Workmen's Compensation Law. We cannot accept that conclusion.

The underlying purpose of the Workmen's Compensation Law was an attempt to spread the loss caused by injuries to or death of employees engaged in hazardous occupations so that the entire loss should not fall upon unfortunate employees suffering injuries or, in case of death, upon their dependents. (*Phœnix Indemnity Co.* v. *Staten Island R. T. Ry. Co.*, 251 N. Y. 127, 132.) Gradually, by amendments, the statute has been extended to include many who were not covered by the original statute.

In determining whether particular persons or classes are covered it is necessary to consider the statute as a whole and the purpose embodied in its enactment. When so considered it seems to us to be apparent that it was never intended to cover militiamen while engaged in active service. There are many reasons which lead to that conclusion.

Working men and women, employees of others, under our system of government are free men and women. They have the same standing, rights and privileges possessed by other members of our body politic. They may work or not according to their own free will. If engaged in work they may quit working at any time if they desire without liability therefor unless prevented by the terms of some express

contract. They may organize labor unions for the purpose of improving their working conditions. They may engage in strikes against their employers to compel their employers to grant them certain rights or privileges which they deem themselves entitled to. They may even engage in peaceful picketing of their employers' places of business to induce their employers to grant them the rights which they claim.

Upon the other hand, when a man becomes a member of the State militia he must, when in active service, surrender for the benefit of the State certain of the privileges enjoyed by working men who are employees. Under the Military Law (Cons. Laws, ch. 36) a member of the militia may be tried for various military offenses, for acts which are not illegal under any other law. He may be tried and punished by a military tribunal and if found guilty may be punished by fines and in certain cases by imprisonment. He is at all times subject to the commands of his superior officers. He cannot quit while in active service without consent of his superiors. Members of the State militia do not become members for the purpose of receiving the small per diem allowances awarded them by the State while they are in active service. " The militia of the state shall consist of all able-bodied male citizens * * * between the ages of eighteen and forty-five, who are residents of the state * * * " (subject to certain exemptions). (Military Law, § 1.) The Governor has power, in case of necessity, to order into active service of the State any part of the militia that he may deem proper. (Id. § 8.) Thus every man who is a resident of the State between the ages of eighteen and forty-five years, subject to certain exceptions, may in case of necessity be required, upon the call of the Governor, to enter the active service of the State as a part of the militia. It seems clear that one who joins the State militia and is engaged in active service therein is in no sense an employee of the State. He is simply performing a duty which he owes to the sovereign State as a resident and citizen. It makes no difference whether he does that voluntarily in time of peace

or in response to the call of the Governor in time of trouble. It should also be noted that the Military Law makes provision for compensating those injured in active service and for their dependents in case of death. (Military Law, §§ 220–224.) Those provisions were in force long before the enactment of the Workmen's Compensation Law and have never been repealed. We are persuaded that the Workmen's Compensation Law does not cover militiamen while engaged in active service. They are not employees of the State within the meaning of the law. (*Hays* v. *Illinois Terminal Transp. Co.*, 363 Ill. 397.)

The question still remains whether the State has waived its immunity from liability to members of the militia and obligated itself to respond in damages for injuries negligently inflicted in active service by one member of the militia upon another and has granted to the Court of Claims authority to determine such liability and award a judgment for money damages therefor.

The statement that the State may be made liable in damages to a soldier or his dependents, because of injuries inflicted upon him through the negligence of a brother soldier or officer, except as provided in the Military Law, is rather startling. We think that the general understanding has always been that for injuries suffered by a soldier in active service the government makes provision by way of a pension. That this State has done in the Military Law (§§ 220–224), wherein it is provided when an allowance may be made, for what it may be made, the procedure to be followed and the amount that may be allowed. In fact, a complete system is set up for handling such claims. To justify a decision that another concurrent remedy has been created whereby the State may be made liable in unlimited amounts requires a statute to that effect, the meaning and intent of which is unmistakable. " Statutes in derogation of the sovereignty of a State must be strictly construed and a waiver of immunity from liability must be clearly expressed." (*Smith* v. *State*, 227 N. Y. 405, 410.) The learned counsel for respondents earnestly urges that former sections 12

(L. 1920, ch. 922, as amd. L. 1936, ch. 775) and 12-a (L. 1929, ch. 467, as amd. L. 1936, ch. 775) of the Court of Claims Act in effect at the date of the death of claimants' intestate constitute such a statute.

"§ 12. Jurisdiction of court. The court of claims possesses all of the powers and jurisdiction of the former board of claims. It also has jurisdiction to hear and determine a private claim against the state, including a claim of an executor or administrator of a decedent who left him or her surviving a husband, wife or next of kin, *for damages for a wrongful act, neglect or default, on the part of the state by which the decedent's death was caused,* and the state hereby consents, in all such claims to have its liability determined. * * *. But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer."

Former section 12-a. "Waiver of immunity from liability for torts of state officers and employees. The state hereby waives its immunity from liability for the *torts of its officers and employees* and consents to have its liability for such torts determined in accordance with *the same rules of law as apply to an action in the supreme court against an individual or a corporation,* and the state hereby assumes liability for such acts, and jurisdiction is hereby conferred upon the court of claims to hear and determine all claims against the state to recover damages for injuries to property or for personal injury caused by the *misfeasance or negligence of the officers or employees of the state* while acting as such officer or employee. Such claim must be submitted pursuant to the procedural provisions of the court of claims act. Nothing herein contained shall be construed so as to affect, alter or repeal any provision of the workmen's compensation law."

The Court of Claims has found that the decedent met his death because of the negligence of a fellow private who was driving the truck in which he was riding, that the

corporal who was riding beside the driver was negligent, and there is a general finding that the officers were negligent in failing to furnish a relief driver.

If private members of the State militia are not employees of the State, then for the same reason the officers referred to were not. The word " officers " as used in section 12-a is included in the term employee. Neither was acting in any employment of the State. They were citizens performing a public duty under the Military Law. By section 12-a " the state * * * waives its immunity from liability for torts of its officers and employees." The officers and privates in the militia referred to in the findings are not " officers and employees " within the meaning, intent and purpose of the section. Therefore, the State has not waived its immunity from liability for their torts. Any other construction would be contrary to the history of military organization and control.

No case can be found in this State in which an award has been made under similar circumstances. On the other hand, it has been the practice in cases where the Legislature believed a moral obligation existed to pay damages to a soldier or his dependents for injuries received in active service, to pass an enabling act authorizing the Court of Claims to make an award.

True it is that if the word " officers " is given its broad meaning it would include every officer engaged in performing a duty placed upon him by law, including the Governor, judges, members of the Legislature and all others occupying an official position in the State. Such an interpretation of the statute would lead to an absurd conclusion. The history of the development of our form of government demonstrates that officials in performing certain functions of government cannot by their official acts create a liability against the State by their negligent performance. The language used in former section 12-a must be given a reasonable construction, consistent with our conception of governmental functions and public policy.

It is urged that as the State, by former section 12-a, " consents to have its liability for such torts determined

in accordance with the same rules of law as apply to an action in the supreme court against an individual or a corporation," it, therefore, follows that the State waives its immunity from liability in all cases for the tortious acts of its officers and makes itself liable if an individual or a corporation would be liable on the same facts. The argument overlooks the fact that under all military law the army constitutes a class separate and apart from the civil officers of the State. In this State it is governed by the Military Law embodied in the statute which provides in detail for the adjustment of claims like the one here in question. " Members of the militia ordered into the active service of the state by any proper authority, shall not be liable civilly or criminally, for any act or acts done by them in the performance of their duty." (§ 15.)

It is true that under the findings an individual or corporation might be held liable for negligence. " But it is not true that whenever an individual is liable for a certain act the State is liable for the same act." (*Barrett* v. *State*, 220 N. Y. 423, 430. Cf. *McAuliffe* v. *State*, 107 Misc. Rep. 553.)

The Court of Claims should have dismissed the claim upon the motion of the State. The conclusion which we have reached makes it unnecessary to pass upon the other questions suggested.

The judgment of the Appellate Division and that of the Court of Claims should be reversed and the claim dismissed, with costs in all courts.

CRANE, Ch. J., LOUGHRAN, FINCH and RIPPEY, JJ., concur; LEHMAN, J., dissents solely on the ground that upon this record the motion to dismiss presented a question of law which the court had jurisdiction to decide and the error in deciding that question has not been brought up for review either in the Appellate Division or in this court; O'BRIEN, J., taking no part.

Judgments reversed, etc.